We'll turn to Bigsby v. Barclays Capital Real Estate, and we'll ask Mr. Grobman to take the microphone. Good afternoon, Your Honors.  The record here contains undisputed evidence that Barclays charged appellants for attorneys' fees and expenses in foreclosure, which were in excess of Barclays retainer agreements with its attorneys, Fannie Mae guidelines, which Barclays' witnesses repeatedly said they had to comply with, California statutes, and amounts Barclays was actually charged by its own attorneys. After five years of litigation, however, the lower court dismissed appellant's complaint without ever addressing the substance of any of these charges. As shown in our papers, we respectfully believe this was improper. Turning first to the motion to dismiss, notwithstanding the fact that Barclays' motion to dismiss the claims under California's unfair competition law consisted of exactly 12 words and said nothing about the unfair and unlawful prongs of the statute, the court dismissed those claims in their entirety. Barclays' 12-word argument completely failed to meet its burden on its 12b6 motion. Moreover, the court failed to provide any explanation, none, supporting its dismissal of the claims that the alleged overcharges were either unfair or fraudulent under the UCL, providing a completely inadequate basis for appellate review. Now, to the extent that the court may have inferred that the UCL fraud claim could be dismissed for the same reasons it dismissed the RICO claim, that would itself have been error. As California courts in the Ninth Circuit have made clear, the fraud prong of the UCL is far different from common law frong, with no scienter, reliance, or actual falsity requirement. Rather, the UCL's fraud prong requires only a showing quote that members of the public are likely to be deceived by the practice. Now, Barclays, in its papers, expresses bewilderment as to how fee limitations in its retainer agreements with attorneys are relevant to what it can pass on under contractual fee shifting clauses. But the answer is obvious. As the Supreme Court said in Hensley, fees, quote, that are not properly billed to one's client are also not properly billed to one's adversary, unquote, under a fee shifting clause. And as this court said in Crescent Publishing, the actual billing arrangement between a litigant and its lawyer is, quote, a significant factor in determining what fee is reasonable, unquote, under a fee shifting clause. In fact, as we showed, California courts have regularly found that the attorney's fees specified in a retainer agreement are a ceiling on what can be charged to an opposing party in litigation. It's no wonder, therefore, that a federal court in Massachusetts found that a litigant's failure to disclose these fee limitations in retainer agreements is plainly fraudulent. Turning to the motion for summary judgment. In opposition to summary judgment, plaintiffs demonstrated that Barclays repeatedly charged each of them for legal fees and expenses which were, one, in excess of what Barclays was actually charged by its attorneys and in violation of California foreclosure statutes. The court refused to consider this evidence because plaintiff had purportedly not specifically raised the California statute or the allegation that Barclays never paid these fees to its attorneys in the complaint. In reaching this conclusion, the lower court required pleading at a level of specificity that was not justified by Tomley to quote this court's finding in ideal steel. First, each of the challenged charges were specifically identified in the 73 page 346 paragraph complaint along with the reasons why they were believed to be improper. As both this court and the Supreme Court have found, the failure in a complaint to cite a statute or to cite the correct one does not affect the merits of a claim. In fact, in city of Shelby, the Supreme Court recently found that, quote, it is unnecessary to set out a legal theory for the plaintiff's claim for relief. Second, even if the allegations of the complaint had been insufficient, appellant's answers to Barclays interrogatories identified exactly why these charges were improper, detailing the relevant statutes and legal theories. In refusing to even look at the interrogatories, the court ignored hundreds of cases in which this and other courts rely on interrogatories to determine whether claims were properly raised. Finally, even if the complaint in the interrogatories had not provided adequate notice of the plaintiff's claims, this court's decisions in ideal steel and Kyler demonstrate that a court cannot simply ignore the evidentiary record after discovery has been concluded, but must consider the evidence to see whether it, quote, filled the perceived gaps in the complaint, unquote, to quote this court. Turning to the unjust enrichment claims, the court dismissed the unjust enrichment claims based on the alleged overcharges on two grounds. First, because unjust enrichment is purportedly barred in California where there is a contract covering the subject, even when the contract is with another party. And second, because the evidence indicates that Barclays merely passed on the alleged overcharges collected from plaintiffs to their attorneys. However, as plaintiffs demonstrated in their papers, the notion that California prevents an unjust enrichment claim where there is a contract with a party other than the defendant is directly refuted by dozens of California cases. Moreover, Barclays submitted no evidence in its initial motion papers, none that it actually paid the challenge fees to its attorneys. The Rule 56-1 statement said nothing about these challenge fees and expenses, much less that they were passed on to attorneys. The only piece of evidence relied on the court to prove payment was raised in Barclays' reply brief, a pooling and servicing agreement which suggested that Barclays had the requirement to advance attorney's fees on behalf of lenders. That PSA was unauthenticated, patent hearsay, and missing dozens of pages. Moreover, even if it was properly raised and admissible, the fact that Barclays was contractually required to pass on purported fees and expenses collected from borrowers provides no evidence that it abided by that requirement, much less that it did so in the case of the fees and expenses collected from the appellants. Obviously, the existence of a contract provides no proof of its performance. Now, in discovery, plaintiffs repeatedly demanded that Barclays produce invoices showing legal bills involving plaintiffs and documents showing payment of those bills, but Barclays produced nothing. You have a minute left. Thank you. Barclays claims that it is absurd that it should be required to show that it actually paid the fees and expenses it issued to its attorneys. However, that is precisely what litigants are universally required to do to get reimbursed for such fees whenever they seek them in federal and state courts. Finally, the court granted summary judgment on appellant's claim that Barclays improperly charged Herman Grimes for late fees after acceleration, finding that the statute of limitations on that claim had run. However, Barclays presented no evidence, none, showing that it ever advised Grimes that he was even being charged for late fees in 2009 in a payoff statement or otherwise. Moreover, even if there was such evidence, California law is clear that the statute of limitations on a cause of action does not begin to run until the plaintiff suspects or should suspect that his injury was caused by wrongdoing. Barclays did not even attempt to show that Mr. Grimes knew or should have known that imposition of the late fees that they never told him about might have been improper. I've reserved two minutes, Your Honors. Thank you. Thank you very much. We'll hear from opposing counsel, Rappelli. Thank you, Your Honor. And may it please the court. Plaintiff's strategy throughout this litigation, candidly, has been to throw everything they can think of at the wall to see if anything sticks, and if not, to find more things to throw at the wall. They alleged one scheme after another in the proceedings below. And Judge Kodal showed remarkable patience with these constantly changing theories and allegations. He let them amend the complaint twice over our objection. He entertained multiple motions for reconsideration, even partially granting one of them. He gave plaintiffs every opportunity to find a coherent basis for their claims. But he rightly rejected, in the end, every single one of them in multiple, carefully reasoning orders. And on appeal, plaintiffs are now doing the same thing they did below. They're trying to change the theory as much as they can. Many of the arguments in the briefs are raised for the first time on appeal or were raised for the first time below in reconsideration motions. And those arguments are all waived. The ones that aren't waived are deeply flawed, as Judge Kodal correctly found. I'm not going to rehash all the arguments that are briefed. I'm going to just focus on a few key points. First, plaintiffs claim that the attorney's fees they were charged exceeded what the law firms were allowed to charge CCRII under the agreements we had with those law firms. The key point there is that as mere servicers of plaintiffs' loans, we were just the middleman in paying those fees. We paid the lawyers, and then we collected reimbursements from the borrower. And we did both of those things not on our behalf, but on behalf of the owners of the plaintiff's loans, who were foreclosing on the loans and needed to pay lawyers to take care of that. That, in simple form, is why plaintiff's unjust enrichment argument falls flat. We weren't enriched in any way by those fees. It doesn't matter whether the fees exceeded any cap from the agreements that we had with the lawyers. It's untrue, by the way. The district court didn't need to reach this, but we did brief this below. It said AA85 to 86 in the record. It's untrue that the fees exceeded the cap from the agreement, but it doesn't matter. The point is, starkly, CCRII was not enriched either way because we didn't keep any portion of those fees. And plaintiffs never alleged otherwise below. Their complaint never alleged that we skimmed a portion of the fees for ourselves. It said that we paid those supposedly inflated fees to the lawyers and then passed them on to the buyers. And in their summary judgment brief, they explicitly said, and I quote, that the plaintiffs assumed that DCREI actually paid the alleged overcharges to its attorneys. That's at AA62, note 18 of their brief. They didn't argue otherwise until they lost in summary judgment, and then they moved for reconsideration. That argument is completely waived, and it lacks support in the record anyway. They also tried to make a number of arguments on appeal that passing on these fees violated California's unfair competition law. Again, these arguments weren't raised below. The reason we only had a 12-word argument, it was no longer in effect. We had a very short argument in the motion to submit. It's because their argument was that their claims in the complaint were completely conclusory and should be dismissed for that reason. The arguments they're making here were not articulated in any legal theories or even facts sufficient to meet the elements alleged in their complaint. They weren't articulated in the motion to dismiss briefings. They weren't articulated until reconsideration, and again, that means they're waived. But in any event, the arguments are meritless, and the key reason why is that the arguments all rely on a contract to which the plaintiffs weren't a party and they weren't an intended beneficiary. Even if the lawyers charged fees above the caps in their fee agreement to be a BCREI, which, again, we deny, and even if BCREI passed on those fees to the plaintiffs, those facts wouldn't amount to fraudulent, unfair, or unlawful conduct. As Judge Kotel put it, at most, the conduct would amount to BCREI failing to take advantage of a flat rate that it had negotiated with its lawyers. So we had no incentive to do that. There's no genuine evidence that we did do that. But even if we did, there wouldn't be any law against it. It wouldn't be unfair to plaintiffs. The plaintiffs can't claim they had any right to a particular fixed fee. And it wouldn't be misleading because BCREI never promised anything to these plaintiffs about what rate they'd be charged. If what they're trying to argue now is that the fees were unreasonably high, that's a different claim. It wasn't alleged in the complaint. And it would be a breach of contract claiming it's their loan owners. It's not a basis for BCREI claiming it's us. And they haven't ever alleged or demonstrated facts that support such an argument. The fees we're talking about here are only in the hundreds of dollars. And the supposed overcharges, it's a minor amount. For example, Brandt alleges she was charged $635 for foreclosure trustee fees. It says they should have only been $600. And the claim is factually mistaken, that $35 extra dollars were for a separate fee for a separate task. But it doesn't matter. We're talking about $35 here. If a $600 fee is unreasonable, if a $600 fee is reasonable, it's hard to see how a $635 fee is unreasonable. This court remarked in the Miller case that we cited that legal fees in this sort of range, if it's several hundred dollars for a given task, are reasonable as a matter of law. If plaintiffs had evidence of fees that were truly outside any reasonable range, they would have alleged that. They didn't. Instead, they frame their allegations around a bogus technicality, the idea that the fees had to exactly match a schedule and agreements that PCREI have with its lawyers. And again, those are agreements that they weren't a party to, they weren't an intended beneficiary of. This was never a cause of action, a valid cause of action in the first place. Those two key points, that we were just a middleman and the plaintiffs weren't a party to the agreements their claims are based on, those points are sufficient to address most of the arguments plaintiffs make in appeals. The rest of the arguments really don't merit discussion. The fee splitting claims fail. If there was no fee splitting here, and even if there was, it only concerned that the lawyers didn't get the fees after they were paid. It had nothing to do with PCREI's right to collect those fees in the first place. Miller's, the Miller decision is squarely in point. Plaintiff Grimes' late fee claim is clearly time barred. And the other two schemes that plaintiffs now try to litigate here, were never alleged in the complaint to begin with. They had two chances for men below. They wanted to add those claims then, they could have done so. They're not entitled to assert them in an interrogatory response. It's obviously not a pleading instrument. So those claims should be dismissed. If the court has any questions, I'm happy to answer those. Otherwise, we're going to take the rest of the briefs. Thank you. Does Raji have any questions for Mr. Grimes? No, I do not. Thank you. Your Honor, I have reserved two minutes. Yes, you did. You did. Take your two minutes. Go ahead. Thank you, Your Honor. Noticeably absent from Mr. Turner's argument was anything about the UCL claim. And there was also no attempt to distinguish the cases which we discussed in our briefs, which show that the idea that a retainer agreement has nothing to do with whether a party, what a party can charge to an opposing party is simply not true. Again, this court said in Crescent Publishing, and I quote, the actual billing arrangement between a litigant and its lawyer is a significant factor in determining what fee is reasonable under a fee shifting clause. And California cases, and three of the plaintiffs here are from California, California cases regularly find that the attorney's fees specified in a retainer agreement are a ceiling on what can be charged to an opposing party in litigation. So, as we said, the Massachusetts court when presented with this identical issue of a party attempting to charge attorney's fees in excess of the amounts in the retainer agreements it has, the court found, this federal court found that it was acting plainly fraudulently, and I believe sanctioned them in excess of $140,000. The idea that this only involves, you know, these three or four people, this is a practice as we've shown, they are routinely charging more, they don't dispute this, and there are tens and tens of thousands of people who have been singularly charged. The arguments regarding the question of whether these were adequately pled, I think there's no question that they've been adequately pled. Interrogatory certainly should be looked at. And Mr. Turner says nothing about this court's decisions in Ideal Steel and in the Kyler case, which says that after discovery, you have to look at the record evidence to see whether even if there was some pleading inadequacies, whether they were filled in by the evidentiary record. Okay. Any questions for Mr. Groman? Judge Raji? No, I still have no questions. Thank you. Judge Sullivan. Yeah, I have a question for Mr. Groman. So, Mr. Groman, I guess I'd ask you to respond to Mr. Turner's point, which is that I think one point, I guess it was in the summary judgment briefing. There's an assumption on the part of you or your client that Barclays actually paid these overcharges to its attorneys and its outsourcers. In other words, that they didn't keep any of this. And yet it seems now you're arguing that they did keep this, and therefore there's an unjust enrichment claim to be had. So which is it? Or am I missing something? I think, Your Honor, the assumption I don't have, I think it's extremely deceptive to say, and we mentioned the brief, to say that we assumed what we said in our opposition to summary judgment is that for the purposes of summary judgment, we will assume that these were paid, although there's nothing in the record to indicate that they were. There is nothing in the complaint. Well, what is in there in the record to suggest that they did retain these overcharges, which would be necessary for an unjust enrichment claim? Well, there are several things, Your Honor. Number one, the burden of proof is not on us to prove that they didn't pay their attorneys. Never mind the burden of proof. Just answer my question. What in the record is there that supports a finding that there was a retention of the overcharges? There's no evidence in either case. And as I said to Your Honor, as we said in our papers, we specifically requested that they provide us with invoices showing the services, as well as any checks or anything else showing the payment of those. As Barclays pointed out, we're not in a position, we don't have that information. This is a question of whether they paid their attorneys for these charges that they levied against us. That's not information that we can get other than from them. We specifically asked for that. They provided nothing. There's no indication of payment. That's something that is routinely required, Your Honor, when a party is trying to be compensated for attorney's fees that it allegedly incurred. That's a basic aspect of it. So let me ask you another question because my time is short. So you're arguing that under the California UCL, these fees were unreasonable because they exceed the network agreements, right? They were unreasonable. They also violated. Yes, they were unreasonable. My question is that so because they're unreasonable, that makes them unlawful. That's what your argument is. No, Your Honor. They are unlawful because they violate California law. Because California law has specifically said in the cases that we cite in our brief that the attorney's fees and the expenses in a retainer agreement constitute a, quote, ceiling on the amount that can be passed on. That is the law in California. So that's my point. Under the UCL, there are three ways to sort of get there, right? Unfair, fraudulent, and unlawful. And you're saying that the unreasonableness of the fees because they exceed the contract terms makes them unlawful, correct? No, Your Honor. What I'm saying is that California, well, what we're saying is that California, yes, they exceed the contract terms in the retainer agreement. And California case law says that they cannot exceed the terms in the retainer agreement. California law prohibits what they've done. So not only is that unlawful, it's also deceptive and unfair. And my next question then is, did you make that argument below to Judge Kodal before a motion for reconsideration? Did you make that argument in the complaint? Did you make that in the opposition to the motions? I believe, Your Honor, that we did make that argument, yes. And it wasn't the idea that this wasn't an argument that was raised by the defendants in their papers. As we indicated, the motion to dismiss consisted of 12 words, specifically applying to the UCL claim. But, yes, we definitely made that argument. We argued, and the complaint said, that it violates each aspect of it. And if you see and if you look at our summary judgment papers, our summary judgment papers said that each of these things, specifically charging more than what was allowed in the retainer agreement, is both unlawful, unfair, and deceptive. All right. And then I wanted to, Judge Kabanis, if I could, I had a question for Mr. Turner. Oh, please. So, Mr. Turner, you were talking about the unreasonableness of the fees, and you're saying that's sort of not really your problem because the contract was – there was no privity here. You also talked about the nature of these fees, which is just a few hundred dollars. But there is an allegation in paragraph 216 about $5,000 in legal fees, and that does sound like a lot of money. And I guess I'd ask you to respond to that and see what am I missing there? Why is that not an unreasonable fee that could rise to the level of being unlawful? Your Honor, the – at summary judgment, they did not cite to that particular fee. I don't have it in front of me. Obviously, the fees depend on what the tasks being performed are for. And so you can have, you know, a number of actions required for foreclosure that could add up to $5,000. I'm not sure what that one particularly is. But the ones they cited in the summary judgment were one that was $635 instead of $600, one that was – I think it was like $575 instead of $500. Those were the – the rest were all the same. They were of that nature. I think the point, though, Your Honor, is that the mere fact that the fees were not allegedly a perfect match with some fee schedule in a contract that we had with the lawyers does not imply by itself that it's unreasonable. They're two separate issues. I mean, the cases that plaintiffs cite are completely distinguishable. I can go through them if I'd like. But there's no – you know, you can imagine if you had a contract that said you're going to pay for reasonable travel expenses for somebody and the person, you know, contracts with the travel agency to give them a flat rate on a flight to London and the travel agency ends up charging somewhat more for that for a particular flight, that doesn't mean that the fare they charge is unreasonable or that you can't pass that on to the consumer. It just means that it's not exactly the flat rate that it was agreed to. So there are two different issues. The term unreasonable, it doesn't even appear in the complaint in connection with their inflated fees scheme. So from the start, it's just been this completely hypothetical argument that somehow if a fee passed on to these lawyers doesn't directly match up with a fee schedule in the services agreement with a law firm, that it's somehow illegal and there's just no support for that. Okay. I have no further questions. Thank you, Judge Kavanaugh. Thank you. We'll reserve decision in Bixby v. Barclays Capital Real Estate, 19-3912, and I ask the clerk to close court. We are adjourned. Court is adjourned.